366 So.2d 540 (1979)
Cleveland EANS, Appellant,
v.
The STATE of Florida, Appellee.
No. 78-660.
District of Appeal of Florida, Third District.
January 23, 1979.
*541 Buchbinder & Black and Melvin S. Black, Miami, for appellant.
Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., for appellee.
Before HUBBART, KEHOE and SCHWARTZ, JJ.
SCHWARTZ, Judge.
A jury found Eans guilty of the robbery and aggravated battery of a derelict named James Clark, on April 13, 1977. He appeals the judgment and sentence against him. We affirm.
After 10:00 P.M. on the night in question, Clark was sleeping under a downtown Miami expressway when he was attacked, robbed and beaten by four young black males. All escaped from the scene Two nights later, on April 15, 1977, and two blocks away, Ambrose Harrison was asleep under the same expressway when he was surrounded by four young black males who began to search his person in order to rob him. The youths were interrupted by two police officers and abandoned the apparent robbery attempt. They were chased from the scene by the officers, one of whom caught Eans, then 15 years of age, a short distance away. Although Harrison could not identify Eans as one of his assailants, Clark could and picked him out of a live lineup at Youth Hall on April 20, 1977. The state, however, probably believing that the Harrison case was the stronger one because Eans was caught in the act, proceeded against Eans for that offense. In the course of time, however, Harrison drifted on and could not be found; for want of a victim, that case against Eans was eventually dismissed under the speedy trial rule. Apparently because of this fact, the state then began prosecuting Eans for the Clark case, the one now before us, by arresting him on those charges on December 2, 1977.
At the trial which followed, the state, over objection, introduced evidence under the Williams rule[1] through the arresting police officer that Eans had been involved in the Harrison incident. When Clark took the stand to testify, an interesting, perhaps unique, series of events took place. On direct examination, Clark directly and positively identified Eans as one of those involved; on redirect, however, he withdrew that identification, stating finally:
"Q. All right. Well, is he [the Defendant] the person who was in front of you that night?
A. I don't think so, honestly."
* * * * * *
Q. You say now you don't think he was the person who was in front of you?
A. No, sir.
Q. For what reason, sir?
A. He's too tall, and he's too fat in the face and  now, I made a mistake."

Thus faced with what the trial judge aptly called "almost a classical case of surprise," the prosecution was permitted, again over vigorous objection, to elicit testimony both from Clark himself, and from a police officer witness, that the victim had identified Eans at the lineup a week after the crime.
On this appeal, the defendant does not contend that the evidence was insufficient to convict and that he was therefore entitled to a directed judgment of acquittal. He seeks a new trial based upon claims of error in the admission of (a) the "other crime" evidence involving the Harrison incident and (b) the testimony concerning the victim's pretrial lineup identification of the defendant.[2] He also contends that the trial judge should have granted his motion for *542 discharge based upon the pre-arrest delay in the commencement of the prosecution against him. None of the points has merit.
As to the first, we think it clear that evidence of the Harrison crime was properly admitted under the Williams rule "[since] it demonstrated a plan or pattern followed by the accused in committing the type of crime [charged] ..." Williams v. State, 110 So.2d 654, 663 (Fla. 1959). The trivial distinctions which the defendant points out between the two incidents[3] do not overcome the obvious and telling similarities: the proximity of date, time, and location, the type of victim, the number of offenders, the type of offense. These similarities are so strong as to compel the conclusion, which is the basis of the "Williams rule," that the fact that Eans was involved in the Harrison incident is persuasive evidence that he also committed the crimes with which he was charged. In accord with this determination are several cases, of which the Williams case itself is the primary example, in which much more attenuated factual similarities were nevertheless held to justify admission of "other crime" evidence. Hutchins v. State, 334 So.2d 112 (Fla. 3rd DCA 1976), cert. denied, 341 So.2d 291 (Fla. 1976); Bush v. State, 341 So.2d 534 (Fla. 3rd DCA 1977); cf. Blackburn v. State, 208 So.2d 625 (Fla. 3rd DCA 1968).
Concerning the defendant's second point, it need only be said that the Supreme Court has very recently held that a prior out-of-court identification is admissible as substantive evidence of guilt when the victim testifies at the trial even though, unlike the situation here, he can no longer make any identification of the defendant at all. State v. Freber, 366 So.2d 426 (Fla. 1978). Moreover, it is apparent that the trial judge correctly characterized Clark's statement that Eans was not the man as a textbook "surprise." It is therefore clear that evidence of his prior out-of-court identification of the defendant was also properly admitted, as a prior inconsistent statement, to impeach the recantation. It is well-recognized that cross-examination and impeachment in this manner is authorized when a witness gives testimony which is both surprising and affirmatively prejudicial to the party calling him. Hernandez v. State, 156 Fla. 356, 22 So.2d 781 (1945); Foremost Dairies, Inc. of South v. Cutler, 212 So.2d 37 (Fla. 4th DCA 1968); Johnson v. State, 178 So.2d 724 (Fla. 2d DCA 1965); § 90.09, Fla. Stat. (1975). That rule surely applies to this set of circumstances.
Insofar as the defendant complains separately of the testimony of the police officer who witnessed the lineup and Clark's identification of Eans,[4] the contention is answered not only by the Freber case, supra, but even by the Supreme Court's pre-Freber approval in Willis v. State, 217 So.2d 106, 107 (Fla. 1968) of the following language of the First District in Willis v. State, 208 So.2d 458 (Fla. 1st DCA 1968):[5]
"Such testimony is direct evidence of facts that are within the personal knowledge of the witness who observes the victim make an identification of the accused from photographs or a police lineup, and is admissible when the identifying witness is present and testifies at the trial, and is subject to cross-examination by the accused. Such testimony has always been considered admissible in rebuttal of testimony tending to impeach or discredit the testimony of the identifying witness, or to rebut a charge, imputation, or suggestion of falsity." [emphasis supplied]
*543 Finally, we hold that the defendant was not entitled to a discharge because of the eight month delay involved between his apprehension in the Harrison incident and his arrest on the Clark charges. This is so because he did not, as is required to justify a dismissal of the charges, demonstrate that his defense was in any way prejudiced by that delay. State v. Griffin, 347 So.2d 692, 695 (Fla. 1st DCA 1977), cert. dismissed, 358 So.2d 134 (Fla. 1978). The defendant argues that he was harmed by the fact that, during the intervening period, Harrison disappeared and was not available to testify that he could not identify Eans. The record shows, however, both that Harrison's testimony could not really have helped Eans, who was caught at the scene, and that, in any case, the jury was actually told by the investigating officer that Harrison had not been able to make an identification.
Affirmed.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla. 1959).
[2] A point which challenged the denial of a special requested instruction on the jury's consideration of fingerprint evidence introduced against Eans was (correctly) withdrawn at the oral argument in the light of Jones v. State, 336 So.2d 672 (Fla. 1st DCA 1976), cert. denied, 341 So.2d 1083 (Fla. 1976).
[3] Almost all of the alleged dissimilarities are attributable to the facts that Harrison did not, while Clark did, testify at the trial, and that, unlike the one involving Clark, the Harrison incident was interrupted before it could be completed.
[4] Unlike the situation in State v. Ciongoli, 313 So.2d 41 (Fla. 4th DCA 1975), cert. disch., 337 So.2d 780 (Fla. 1976), the defendant does not contend that the lineup itself was impermissibly suggestive.
[5] The Freber case eliminated that portion of the holding in Willis which restricted the use of such testimony to corroboration and rebuttal.